**Robert Tenorio Torres**
**Attorney at Law**
Plata Drive, Whispering Palms (Chalan Kiya)
P.O. Box 503758
Saipan, MP 96950

Tel: (670) 234-7859
Fax. (670) 234-5749

Attorney for: Norbert B. Camacho

## UNITED STATES DISTRICT COURT THE DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>**NORBERT BENAVENTE CAMACHO**<br><br>　　　　　Defendant. | Case No. 07-00007<br><br>**DEFENDANT'S OBJECTION TO PRESENTENCE INVESTIGATION REPORT AND MEMORANDUM IN AID OF SENTENCING**<br><br>Hearing: Oct. 9, 2007<br>Time: 9 am<br>Judge: Alex R. Munson |

Defendant NORBERT BENAVENTE CAMACHO, (Mr. Camacho), through counsel Robert T. Torres, respectfully submits the following Memorandum in Aid of Sentencing to provide the Court with additional information. This

memorandum is also intended to assist the Court as it considers the appropriate sentence for Mr. Camacho.

A.

## OBJECTIONS/EXCEPTIONS TO THE PRESENTENCE REPORT

1. "Offense Behavior Not Part of Relevant Conduct" (Paragraphs 37-39): Mr. Camacho objects and lodges his exception to this portion of the Presentence Report ("Report"). Mr. Camacho simply maintains that he was not involved in this transaction. The information in the Report is gleaned from the Rule 16 Discovery materials but Mr. Camacho asserts that he was neither present nor involved in this transaction which, if he were involved, may be considered as a dismissed count but relevant conduct. *See, e.g., United States v. Turner*, 898 F.2d 705, 711 (9th Cir. 1990) (district correctly aggregated drug quantities in counts dismissed pursuant to plea agreement, finding them to be relevant conduct).

Moreover, consideration of dismissed conduct is not discretionary under the Advisory Guidelines. The sentencing court must evaluate whether the dismissed counts constitute relevant conduct. *See United States v. Fine*, 975 F.2d 596, 602-03 (9th Cir. 1992) (en banc) (upholding incorporation of counts dismissed by plea agreement as relevant conduct,

and noting that "[t]he guidelines prevent the court from ignoring [a defendant's] proved conduct in the dismissed counts, so that the sentence reflects the crimes he actually committed").

Here, Mr. Camacho points out that the Report indicates that the offense behavior in case no. 07-0005 is not part of relevant conduct. To the extent that this portion of the Report may be considered in any way, Mr. Camacho lodges his exception.

2. <u>Financial condition: Ability to Pay</u> (Paragraphs 77-82). Mr. Camacho objects to the portion of the Report regarding his financial condition, specifically paragraph 80 and the conclusion in paragraph 82 that Mr. Camacho has "the ability to pay a fine within the guideline range."

Mr. Camacho first objects and takes exception to Paragraph 80 because it discusses the prospect of Mr. Camacho inheriting real property notwithstanding in his father's estate given the fact his mother is still alive and well. Under the Probate Code the surviving spouse would take one-half of the estate and the heirs would take the other half. Also, nothing is submitted which provides the state of affairs of his father's probate case. Second, the probate process does not necessarily establish that Mr. Camacho will in fact inherit such properties absent a judicial decree of final distribution. Therefore, Mr. Camacho registers his exception to this

paragraph 80.

Mr. Camacho objects to the conclusion in paragraph 82 that he has the financial ability to pay a fine within the guideline range. As set forth in paragraph 91 of the Report, the fine range is between $3,000 to $30,000. Considering the financial information set forth in the Report, Mr. Camacho maintains that the conclusion should be, at the most, that he may be able to pay a fine at the *minimum* amount of the range. As presently stated, the Report suggests that Mr. Camacho is able to pay a fine up to the maximum amount of $30,000. Given his resources, that is simply not the case.

Moreover, even if he may be able to pay the statutory fine, Mr. Camacho maintains that he does not have the financial ability to pay the additional fine in order to pay for the costs of his imprisonment or supervised release as discussed in paragraph 82 of the Report. His income is minimal and his wife earns the bulk of their income. For these reasons, Mr. Camacho registers his exceptions to the Report.

B.

### SUPPLEMENTAL SENTENCING INFORMATION

In view of the Report and in addition to the policy objectives of the Advisory Sentencing Guidelines, Mr. Camacho would assert that the main issues for consideration at sentencing are the following:

1) The appropriate sentence within the applicable range of 10-16 months of confinement; and

2) Whether Mr. Camacho merits a "split sentence" pursuant to Zone C of the Sentencing Guidelines.

The Report in paragraphs 84 and 89 indicates that Mr. Camacho may be sentenced to a "split sentence." The discussion in the applicable guideline at U.S.S.G. § 5C1.1(d) states the following:

> (d) If the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by--
>
> > (1) a sentence of imprisonment; or
> >
> > (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment.

The Commission Comment to U.S.S.G. § 5C1.1 further states that, "[s]uch a substitution[of home detention in lieu of imprisonment] should be considered only in cases where the defendant's criminality is related to the treatment problem to be addressed and there is reasonable likelihood that

successful completion of the treatment program will eliminate that problem."

### *"Battling the Dragons": Old Habits are Hard to Die*

The Presentence Report plainly confirms that Mr. Camacho's lifelong history of "polysubstance abuse," now as a 53 year-old man, requires intensive rehabilitative treatment while incarcerated and during entire period of supervised release. Mr. Camacho's years in young adulthood were punctuated by experimentation with hard drugs during his years on Saipan and in Guam.

Particularly on Guam, Mr. Camacho's inclination to substance abuse hardened during his use of highly addictive drugs such as cocaine, heroin and speed. So it would not have been a surprise to anyone to learn that Mr. Camacho continued with substance abuse with marijuana from 1987 through 1990. Ultimately, Mr. Camacho's battle with the dragons of substance abuse continued with his experimentation in smoking "ice" which started in 1991 and became a full-fledged demon around 2005.

As a result of his inability to control or end his addiction, Mr. Camacho's use of "ice" to sustain himself while fishing exploded into destructive conduct leading into selling "ice" to sustain his own addictive habit and to pay his bills which continued until the period before his arrest

on May 6, 2007. Without this case, Mr. Camacho may have become another tragedy in a line of losses to loved ones due to "ice" addiction.

Prior to his arrest, Mr. Camacho's addiction spiraled out of control and threatened to destroy his marriage with Lisa Camacho. He associated with Ms. Dina Torres Gonzales, another "ice" abuser, and with whom his wife suspected illicit relations— the illicit relationship with "ice" use if nothing else.

Moreover, Mr. Camacho continues to struggle with his addiction, as indicated by the admonishment from the Probation Office for failing to show on two occasions for drug testing. However, he has not tested positive for any substance abuse since his arrest and while on pretrial release albeit little over one month.

The above discussion paints a picture of a man who clearly remains haunted by a lifelong association with drugs who was able to somehow cope with that addiction until it controlled him. These are the dragons with which Norbert B. Camacho has struggled and it is now time for him to turn and face those demons to slay them— but he clearly cannot do it without his family's support; without intervention; and without this Court's assistance.

For these reasons, Mr. Camacho's criminal profile is one which requires intensive rehabilitative treatment and care during incarceration and

while on supervised release. Even if he is to disassociate himself with those involved in "ice" use, Mr. Camacho realizes that he is simply one turn or one phone call away from finding those demons and losing control. If anything, a course of incarceration and intensive treatment will deter and discourage Mr. Camacho from returning to that life and choosing his life with Lisa and their young children. He knows he is no longer the virile young island boy but is an older man who needs to find the strength and wisdom to do better for himself and his family.

For these reasons, Mr. Camacho respectfully requests that the Court fashion a sentence that is most progressive in substance-abuse treatment including the following:

1. Substance abuse counseling while incarcerated including individual and group therapy;

2. Skill-building and education courses to gain a new career upon release;

3. Post-release supervision including drug testing and monitoring;

4. Court-ordered participation in Alcoholics Anonymous and other appropriate counseling or support groups; and

5. Any other treatment or program recommended by any specialist or treating professional for Mr. Camacho.

### *"Splitting the Sentence": Incarceration and Home Detention: Punishing the Offender while Helping His Family*

In this Memorandum it is Ms. Lisa Camacho who would request that the Court fashion a split-sentence as discussed in the report, of a term of 10 months, 5 months to serve in incarceration and 5 months in Home Detention. Under the comments to the Sentencing Guidelines, a split-sentence under Zone C is appropriate where the defendant's criminality is related to a drug treatment problem to be addressed. The question here is whether "there is reasonable likelihood that successful completion of the treatment program will eliminate that problem."

Mr. Camacho's legal troubles have come about as a result of his drug addiction. While it is undisputed that "ice" remains one of the most destructive drugs here in the Commonwealth in addition to being highly addictive, success can be had by an offender who enrolls in a continued course of treatment. It cannot be said that "ice" addiction can be "cured" or "eliminated"— it can only be managed. But the offender must be motivated to comply and discouraged from deviating back into the addiction.

As to motivation, Mr. Camacho finds himself at milestone in his life. He is an older man with health problems and with a loving family. He clearly can support his family with fishing— but the period of his detention and this case have taught him a most motivating lesson about the exacting price that

must be paid from following that addiction.

As to discouragement, Mr. Camacho will be incarcerated and/or detained for at least 10 months. After that he will be on supervised release for three years. It will not escape his mindset that should he return to abusing drugs that he will find himself before this Court on a violation of those conditions. Is it possible that Mr. Camacho will stray? Yes. He is a drug addict. Is it likely? Yes. He is a drug addict. Is it a concern for the Court, the Prosecution, the Probation Officer, and his wife? Absolutely.

But nothing can be a greater deterrence for a drug addict, however, than the prospect of more incarceration or isolation— something which Mr. Camacho looks forward to like another bout of gout with the excruciating and debilitating pain in one's knees and joints that you can't even walk. "Gout: you wouldn't want to wish it on even your worst enemy."

The split-sentence will allow for the intensive treatment while allowing Mr. Camacho and his family to be able to survive. Ms. Camacho's letter simply asks that with Home Detention Mr. Camacho can be detained and he can allow her to go out and do her work, *see Ms. Camacho's letter, attached as exhibit "A"*. With a 7 month-old baby and two young children, Mr. Camacho would be detained and do something good that he should have been doing all along had he thought about his family instead of drugs: stay

at home with his family and not associate with other addicts.

For the above reasons, a split-sentence of 10 months is suggested.

## CONCLUSION

The ends of justice and policy goals of sentencing can and will be achieved if the Court were to allow Mr. Camacho to serve half of his term in home confinement so that he may not only be able to receive his counseling services but also take care of his children.

Mr. Camacho is painfully aware of the Court's dim view of one who not only abuses drugs but engages in their sale or transportation to others. In closing, Mr. Camacho appreciates the Court's fair-mindedness and the fair treatment he has received from the Prosecution, the law enforcement investigating agencies, the U.S. Marshals Service, the CNMI Probation Office, and the U.S. Probation Office.

Respectfully submitted this 24th day of September, 2007

*[signature]*

ROBERT T. TORRES  F 1097
Attorney at Law